UNITED STATES BANKRUPTCY COURT
DISTRICT OF COLORADO

In re:

**UTE MESA LOT 2, LLC**                                    Case No.: 17-16194
                                                           **Chapter 11**
EIN: 45-3195638

     Debtor.
_____/

**DEBTOR'S CHAPTER 11 CASE SUMMARY**

Chapter 11 Debtor, Ute Mesa Lot 2, LLC ("UML2" or "Debtor" as appropriate), hereby files this Chapter 11 Case Management Summary, and states as follows:

**DEBTOR'S PURCHASE, FINANCE AND DEVELOPMENT OF THE UTE AVENUE SUBDIVISION**

The Debtor is a Colorado limited liability company. Its sole manager is Leathem Stearn, an individual and resident of the State of Colorado. In 2008, Stearn, through a number of single purpose Colorado limited liability companies, including a predecessor in interest to the Debtor and Ute Mesa Lot 1, LLC ("UML1"), embarked upon a development project to construct two luxury homes at the base of Aspen Mountain, which were supported by shared common elements. Together, the development is referred to as the "Ute Avenue Subdivision."

UML1 owns the real property with a street address of 1001 Ute Avenue, known as "Lot 1", which has a legal description of:

> Lot 1, 1001 Ute Avenue Subdivision/PUD, according to the Plat thereof filed May 9, 2007, in Plat Book 83 at Page 95, at Reception No. 537513

(the "Lot 1 Property").

The Debtor owns the real property with a street address of 1011 Ute Avenue, known as "Lot 2", which has a legal description of:

> Lot 2, 1001 Ute Avenue Subdivision/PUD, according to the Plat thereof filed May 9, 2007, in Plat Book 83 at Page 95, at Reception No. 537513

(the "Lot 2 Property").

A third lot in the Ute Avenue Subdivision ("Lot 3") is owned by 999 Ute Avenue LLC ("Ute 999"), and represents certain of the common elements both serving and shared by Lots 1 and 2.

In furtherance of development of the Ute Avenue Subdivision, UML1 and UML2 (via a predecessor in interest) each obtained separate financing to construct single-family homes on the two separate lots. The home on Lot 1 was originally financed by United Western Bank, whose assets were subsequently seized by the FDIC and were subsequently transferred to First Citizens' Bank.

The home on Lot 2 was constructed with the use of proceeds from a loan from Alpine Bank in the maximum principal amount of $9.5 million, evidenced by a Promissory Note dated as of April 3, 2008 ("Alpine Note") and secured by a Construction Deed of Trust dated as of April 3, 2008 (the "Alpine Deed of Trust"). The Alpine Deed of Trustee encumbers the following real property:

> All of Lots 2 and 3 together with Common Area Lot A, Common Area Lot B, Common Area Lot C, of 1001 Ute Avenue Subdivision/PUD, according to the plat thereof filed May 9, 2007, in Plat Book 83 at Page 95, at Reception No. 537513 of the County of Pitkin, State of Colorado.

(the "Collateral").

**ASSIGNMENT TO AND ADDITIONAL FINANCING FROM PAUL J.A. "LEX" VAN HESSEN**

In or about March of 2010, Paul J.A. "Lex" van Hessen ("van Hessen"), an individual who resides in Monaco, acquired the Alpine Note and the Alpine Deed of Trust.

In order to effectively market and sell both the Lot 1 Property and Lot 2 Property, both properties and the common elements needed to be completed. Construction on the Lot 1 Property was stalled by a *lis pendens* recorded against Lot 1 and the litigation involving Lot 1, until 2016 when the *lis pendens* was released.

Meanwhile, construction on the Lot 2 Property and the common elements continued. On or about April 16, 2010, van Hessen and UML2 agreed to modify the terms of Alpine Loan and extended the maturity of the Alpine Note via a Modification of Note, Deeds of Trust, and Loan Documents recorded as Reception No. 569293 of the Pitkin County Records.

On or about May 1, 2010, van Hessen made a loan to UML2, Ute 999, Ute Mesa 1011, LLC, and 1011 Ute Avenue Homeowners Association (collectively, the "Ute Entities") in the principal amount of $6.2 million ("van Hessen Loan 1"), which is evidenced by a Promissory Note dated as of May 1, 2010 in the maximum principal amount of $6.2 million (the "van Hessen 1 Note"). The van Hessen Loan 1 was secured by a Deed of Trust also secured by the same Collateral securing the Alpine Deed of Trust.

On July 7, 2011, van Hessen made a second loan to the Ute Entities in the maximum amount of $1 million, also secured by a Deed of Trust secured by the Collateral. With these loans, construction on Lot 2 was completed; however, construction on Lot 1, as well as some common elements, remained stalled as a result of the Pitkin County litigation. Therefore, Stearn and UML2 were unable to market and sell Lot 2.

On or about November 24, 2015, van Hessen and the Ute Entities executed a Forbearance and Loan Modification Agreement (the "Forbearance Agreement"). Contemporaneous with the Forbearance Agreement, van Hessen and the Ute Entities entered into a Deed-in-Lieu Agreement (the "Deed-in-Lieu Agreement"). The Deed-in-Lieu Agreement expressly provided that its

provisions would apply only if the Ute Entities were in default of the Forbearance Agreement. In sum, the Deed-in-Lieu Agreement was not an absolute assignment but was, instead, a collateral assignment.

Attached as an exhibit to the Deed-in-Lieu Agreement was a form special warranty deed ("Deed") which was signed by UML2, but which left a blank the date line, and the identity of a "Grantee". The parties intended that the blank Deed secure the performance by Stearn and the Ute Entities.

Pursuant to and contemporaneous with the Forbearance Agreement, the Debtor gave additional security to van Hessen in the form of chattels and intangible personalty associated with the Lot 2 Property via a UCC Financing Statement (the "Additional Collateral").

Also pursuant to and contemporaneous with the Forbearance Agreement, van Hessen insisted that Stearn convey to van Hessen a minority membership interest (1/10 of 1%) in each of the Ute Entities, including the Debtor. van Hessen designated LVH Partners, LLC, an Illinois limited liability company he owns and controls, to become the minority member of each of the Ute Entities[1]. On or about November 24, 2015, each of the Ute Entities, in furtherance of the agreements between Stearn and van Hessen, agreed to and executed amended and restated operating agreements, pursuant to which van Hessen designated LVH Partners, LLC, an Illinois limited liability company he owns and controls, to become the .1% minority member of each of the Ute Entities.

The *lis pendens* recorded against Lot 1 in the Pitkin County litigation was released in 2016, allowing Stearn and UML1 to pursue financing to complete construction of

---

[1] Interestingly, van Hessen's grab of a very minority interest in the Debtor likely impressed him with a fiduciary duty to the Debtor. His conduct in the attempted land grab of the Debtor's property will be the subject of other litigation in this Court.

the Lot 1 Property. By February of 2016, UML1 had secured a commitment for financing from EFO Financial Group, LLC ("EFO"), a private money lender based out of Florida (the "EFO Loan"). The EFO Loan was to be in the principal amount of $13.5 million, and would have allowed for completion of construction of the residence on the Lot 1 Property and of common elements on Lot 3, and fund monthly payments of interest to van Hessen on behalf of the Debtor and Ute Entities.

About a year and a half earlier, the Lot 2 Property was appraised at approximately $36,000,000. Having an ultimate motive to try to grab the Lot 2 Property (recovering both his claim and the more than $15,000,000 in equity existing on the Lot 2 Property), van Hessen interfered with the financing commitment from EFO by stalling the process, reneging on commitments, and intentionally delaying and derailing the process, ultimately preventing the closing of the EFO Loan. As a result of van Hessen's conduct, Stearn and UML1 lost the benefit of EFO Loan. Had van Hessen not interfered with the EFO loan commitment, UML2 would have been able to make payments to van Hessen, the Ute Entities would have been able to complete construction of Lot 1 and remaining common elements in early 2017, and would have been able to effectively market both the Lot 1 Property and Lot 2 Property for sale. In sum, van Hessen's very conduct resulted in the default on his loan giving him the apparent opportunity to attempt his land grab of the Lot 2 Property.

### VAN HESSEN IMPROPERLY CLAIMS OWNERSHIP OF DEBTOR'S PROPERTY

Instead, out of the ashes of the failed EFO Loan, van Hessen began a scheme to claim sole ownership of the Lot 2 Property. On or about February 24, 2017, van Hessen recorded an "Affidavit" in the public records for Pitkin County that asserted defaults under the Alpine Deed

of Trust, and also recorded the Deed, never disclosing that his conduct scuttled the EFO Loan closing resulting in the default about which he then complained.

The Deed was no longer blank; instead, it was filled in with a transfer date and Ute Holdings, LLC as grantee. The Deed was recorded without the consent of the Debtor, and without the intent to convey more than a lien in such property. The same day, February 24, 2017, van Hessen recorded an Assignment of Deed of Trust to transfer his liens on the Lot 2 Property.

By improperly recording the Affidavit and Deed, van Hessen and Ute Holdings claimed to be the owner of Lot 2, despite applicable Colorado statutory authority providing that mortgages, trust deeds, or other instruments intended to secure the payment of an obligation affecting title to or an interest in real property shall not be deemed a conveyance, regardless of its terms, so as to enable the owner of the obligation secured to recover possession of real property without foreclosure and sale, but the same shall be deemed a lien." Colo. Rev. Stat. § 38-35-117. Neither van Hessen nor Ute Holdings conducted a foreclosure or sale of the Lot 2 Property.

Accordingly, to protect its rights in the Lot 2 Property and other collateral, on May 5, 2017, the Ute Entities, including the Debtor, and Stearn filed a Complaint and Jury Demand in the Pitkin County District Court (Case No. 2017-CV-30041), seeking, among other things, a declaratory judgment regarding rights related to ownership of the Lot 2 Property (the "Ute Litigation").

### ACTIONS LEADING TO FILING FOR CHAPTER 11 RELIEF

On June 9, 2017, unbeknownst to and without notice to the Debtor or any of the plaintiffs in the Ute Litigation, Ute Holdings filed a Verified *Ex Parte* Motion for Appointment of

Receiver, alleging "waste" and a purported risk of imminent harm, loss, damage and irreparable injury simply because the Lot 2 Property was purportedly not generating revenue.[2] Then, on June 22, 2017, again without notice, Ute Holdings filed a Verified Supplement to Verified *Ex Parte* Motion for Appointment of Receiver.

Because there was no notice provided to the Ute Entities, and despite the lack of any true imminent danger of harm to the Lot 2 Property, the Collateral, or the Additional Collateral, on Wednesday, June 28, 2017, an Ex Parte Order for Appointment of Receiver was entered in the Ute Litigation (the "Receiver Order"). Among other things, the Receiver Order appointed Cordes and Company, Inc. as receiver for the Collateral and Additional Collateral (including the Lot 2 Property), and ordered that the Receiver take physical possession of, manage, operate and protect the Collateral and Additional Collateral.[3]

Notwithstanding the Court's direction to serve the Receivership Order on the Debtor immediately and despite counsel for the Debtor having filed the primary declaratory judgment claims, van Hessen delayed service of the Order, as well as any notice to the Plaintiffs in the state court action (including the Debtor herein) until after the close of business on Friday, June 30, 2017, the start of the extended Fourth of July Holiday weekend. It is unknown if van Hessen posted the required bond with the state court prior to Friday, June 30, 2017 as no bond copy or court filing of the same was ever communicated to UML2's counsel. Under the threat of the Receiver ousting UML2 from possession of its property—both the Collateral and Additional

---

[2] Interestingly, the Debtor is negotiating for the short term lease of the Lot 2 Property for the winter months likely to generate substantial income which can be used to service the DIP Financing contemplated in this case. The Debtor wanted to generate income during the anticipated marketing and sale period for the Lot 2 Property. Van Hessen's bald assertions underlying his attempted land grab are belied by the actual facts.

[3] Notably, the Receiver Order found that, despite the Deed, UML2 is the owner of the Collateral and Additional Collateral, which included the Lot 2 property.

Collateral—the Debtor concluded that the possession of its assets by a Receiver at the direction of van Hessen would not be in the best interests of the Debtor or its creditors. Consequently, on July 6, 2017, the Debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code.

### DEBTOR'S OBJECTIVES IN CHAPTER 11

In Chapter 11, the Debtor intends to work towards stable Debtor-in-Possession financing to pay van Hessen the undisputed principal indebtedness he is owed, provide for a forum where the disputes over any additional indebtedness, van Hessen's breaches of fiduciary duty and additional claims by and between the Debtor and van Hessen can be expeditiously resolved, allow for the orderly marketing and sale of the Lot 2 Property in conjunction with the Lot 1 Property, provide for the payment to priority and unsecured creditors and provide for a distribution of the substantial equity to essentially the sole equity security holder.. The lien interests of van Hessen in the Lot 2 Property are fully secured. The principal portion of the Debt to van Hessen is believed to be approximately $12,000,000, while an appraisal in 2014 valued the Lot 2 Property at approximately $36,000,000, with the high end Aspen real estate market having only improved substantially. The interest owed to van Hessen is both in dispute and is subject to substantial claims described above. This valuation alone shows that the Lot 2 Property is in no true danger of harm, as alleged by van Hessen as the basis for appointment of a receiver.

In summary, in the first few days following the Petition Date, the Debtor anticipates seeking approval of Debtor-in-Possession financing that will allow the Debtor to pay van Hessen his undisputed principal of his indebtedness along with additional funding to pay certain priority and unsecured claims, all while preserving the substantial equity value owned by the holders of equity security interests which have not and should not be forfeited to van Hessen rewarding him

for his attempted land grab. The Debtor further intends to immediately seek turnover of any property of the Bankruptcy Estate over which the Receiver had, in fact, taken constructive possession prior to the Petition Date.

The Debtor next intends to address van Hessen's claims against the Lot 2 Property, Collateral, and Additional Collateral via adversary proceeding to avoid apparently fraudulent transfers, including the transfer of interests in the Debtor itself and the Lot 2 Property, and to determine the actual amounts of interest due to van Hessen, as prior requests and demands for a full accounting of principal and interest have gone without a response.

Finally, through the plan process, the Debtor intends to obtain take-out financing that will allow payment to unsecured creditors and sufficient time for the Lot 2 Property, along with the Lot 1 Property, to be marketed and sold at its true value.

Respectfully submitted,

DATED: July 7, 2017.  **PODOLL & PODOLL, P.C.**

By: *s/ Richard B. Podoll*
    Richard B. Podoll
    Robert A. Kitsmiller
    5619 DTC Parkway, Suite 1100
    Greenwood Village, CO 80111
    Tel: (303) 861-4000
    Fax: (303) 861-4004
    Email: rich@podoll.net
           Bob@podoll.net

- and -

Steven M. Berman, Esq.
SHUMAKER, LOOP & KENDRICK, LLP
101 E. Kennedy Blvd., Suite 2800
Phone (813) 229-760; Fax (813) 229-1660
Email: sberman@slk-law.com

            Proposed Counsel for Ute Mesa Lot 2, LLC

## CERTIFICATE OF SERVICE

  I HEREBY CERTIFY that on July 7, 2017a true and correct copy of the foregoing was served via CM/ECF Electronic Notice or US Mail on **all creditors** on the attached Mailing Matrix and the **Office of the United States Trustee**, Byron G. Rogers Federal Building, 1961 Stout St., Ste. 12-200, Denver, CO 80294.

            *s/ Richard B. Podoll*
            **Attorney**

**Ute Holdings, LLC**
**c/o LVH Partners, LLC**
**1535 North Elston Avenue**
**Chicago, IL 60642**


**Ute Holdings, LLC**
**c/o Kenneth C. Citron, Esq.**
**101 South Mill Street, Suite 200**
**Aspen, CO 81611**


**Cordes & Company**
**5299 DTC Boulevard**
**Suite 815**
**Greenwood Village, CO 80111**


**Blizzard Landscaping**
**0350 Original Road**
**Basalt, CO 81621**


**David Leavenworth**
**Hall & Evans**
**1001 17th Street Suite 300**
**Denver, CO 80202**


**Design Source Build**
**106 Deer Valley Drive**
**Glenwood Springs, CO 81601**


**Garfield & Hecht P.C.**
**625 E. Hyman Ave. Suite 201**
**Aspen, CO 81611**

**Leathem S. Stearn**
**1001 Ute Avenue**
**Aspen, CO 81611**

**Meeham Escavating**
**44 Hooks Lane No. 16**
**Basalt, CO 81621**

**Ute Mesa Lot 3 LLC**
**999 Ute Avenue**
**Aspen, CO 81611**

**Ute Mesa Lot 1 LLC**
**1001 Ute Avenue**
**Aspen, CO 81611**

**1001 Ute Avenue Homeowners Association**
**1001 Ute Avenue**
**Aspen, CO 81611**

**Internal Revenue Service**
**Centralized Insolvency Operation**
**P.O. Box 7346**
**Philadelphia, PA  19101-7346**

**Colorado Department of Revenue**
**Denver, CO 80261-0008**

**Colorado Division of Property Taxation**
**1313 Sherman Street**
**Room 419**
**Denver, CO  80203**

**Pitkin County Tax Assessor**
**Pitkin County Courthouse**
**506 Main Street, Suite 202**
**Aspen, CO  81611**


**Paul J.A. "Lex" van Hessen**
**PJA van Hessen**
**Hotel Hermitage, Apt 320**
**Square Beaumarchais**
**98000 Monaco, France**


**Paul J.A. "Lex" van Hessen**
**Attn: Arie B. Zoller, LVH Partners, LLC**
**1200 N. Ashland Avenue, Suite 600**
**Chicago, IL 60622**


**Paul J.A. "Lex" van Hessen**
**c/o Reuven Bisk, Esq.**
**Crain Caton & James**
**1401 McKinney Street, Suite 1700**
**Houston, TX 77010**


**Paul J.A. "Lex" van Hessen**
**c/o Kenneth C. Citron, Esq.**
**101 South Mill Street, Suite 200**
**Aspen, CO 81611**


**Paul J.A. "Lex" van Hessen**
**c/o LVH Partners, LLC**
**1535 North Elston Avenue**
**Chicago, IL 60642**